Ford, J.
Sylvester W. Robinson was found guilty, at the Essex Oyer and Terminer, in June 1838, of uttering to Joseph Munn, Jr., a forged five dollar note of the Lafayette Bank, in Boston, knowing the same to be counterfeit. To prove he knew it to be such, evidence was oifered of his having passed to W. B. Speer, a forged two dollar note on the same bank, the same day; for which he had been indicted and tried, but acquitted; his counsel therefore objected to the evidence, but it it was admitted by the court. After conviction, sentence was suspended, in order *508 to take the opinión of the rest of the judges, on the admissibility of the foregoing evidence. The defendants counsel wished their opinion, also, whether this was even a forged note, as the alteration therein was alleged to be in an immaterial part; they also had some matters to move, they said, in arrest of judgment, if it should become necessary, and they had leave, by consent, to be heard on all.
1. As to the admissibility of the evidence, I would observe, that in Vanhouten’s case, 2 Pen. Pep., 672, the uttering of other forged notes, by the prisoner, on the same bank, was admitted as circumstantial evidence, by the Supreme Court of this State, on a trial at bar, of the defendant’s knowing them to be forged. This -decision has been followed ever since, in this state; although in a late English case at the Gloucester Assizes, of Rex v. Smith, 12 Eng. Com. Law Rep., 295, Vaughn, Baron, held that the uttering of another forged note on the same bank, would not be admitted, if an indictment was depending against the prisoner for it. The Baron cites no case to this effect; and as to his argument, that á man is not to be convicted of one crime by proving him guilty of another, it seems to me to be confuted by his own admission that it inay be done, if there is no indictment yet depending. If the offence so offered to be proved be of an indictable nature, it can make no difference, in principle, whether an indictment for it has been already found, or remains yet to be found, for it is equally another crime, and yet the English courts as well as ours allow it to be proved as a collateral fact respecting the prisoner’s acquaintance and familiarity with such counterfeits. If one be on trial for forging a bank note, may it not be proved that he is a copperplate printer and that the plate for striking the very note, was found upon him, together with blank impressions of the same kind ready to be filled up; yet the very possession of such a plate is of itself a crime. Or sup-, pose a prisoner had uttered twenty forged notes to twenty different persons and an indictment depending on each, none of them could be admitted in evidence of his guilty knowledge, according to Baron Vaughn’s decision, and the broader his guilt, the more certain would be his escape, if the grand Jury performed their duty by finding indictments.
But the prisoner has been tried and acquitted for uttering the *509 two dollar note, and it is said that evidence of that uttering now, will put him in jeopardy again for the same matter, and also contravene the very record of his acquittal. It is however a mistake that he will be in jeopardy again for that uttering; for, being once acquitted of it, he is acquitted forever. It may put him in jeopardy for uttering a forged jive dollar note, to Mr. Munn, but this is a very different and distinct offence. Iiis acquittal in one case can be no bar to circumstantial evidence of his guilt-in another case. But it is said that it will contravene the record of his acquittal. How the record acquits him of the charge in that indictment, but it does not aver the ground of that acquittal; it may have been for variance in setting out the tenor of the note. The record does not say that he did not utter the note to Mr. Speer, it therefore contradicts nothing contained in the record. The particular ground of his acquittal, is not matter of record, it is matter of presumption only, wholly collateral to the record ; and mere presumption of a fact, is allowed to stand only till the fact itself appears. Here the very fact is offered, of his uttering the two dollar note to Mr. Speer, and as it neither puts him in jeopardy for it as a crime, nor is contrary to any thing found by the record, the evidence is clear of both the objections, and was legally admitted by the court.
2. The prisoner’s counsel moved to set aside the conviction, on another ground. The forgery is alleged to be effected by altering the word “Boston,” into the word “Hew York,” which, it is said, only changes the place where the note purports to be made and dated, but that this cannot affect the validity of the note in the least; that the contract, or promise to pay, is just as binding if made in one place as the other, and the alteration being in an immaterial part, that it cannot amount to forgery ; for that- no alteration of a genuine instrument will amount to this crime unless it changes the operation and effect of the instrument. But this motion certainly cannot be allowed. It appears that there are two Lafayette banks, one in Boston which is insolvent, the other in Hew York which is sound. If the vignette, or ornaments of their respective notes, are left out of view, as they well may be, for they are no part of the contract and are seldom remembered by the public, “ Boston,” is the only word on this bill to show which set of directors made the pro *510 mise to pay. The alteration makes the note purport on the face of it to be made by the New York bank, and tends to charge them with the payment of the money. It is not only altered and circulated with that false design, but had its false effect on Mr. Munn, who honestly gave good money in full for it, and was calculated to impose in like manner upon multitudes of other people. Nice observers might detect the falsification by holding it up to the light, but that does not justify the forgery. The law is to protect the mass of society, and it matters not that a few knowing men are safe. Let us next consider what grounds there are for the motion in arrest of judgment.
1. The indictment sets out a part of the vignette or ornaments of the bill. These ornaments consist, among other things, of an engraved edifice or building, with this inscription under it, “ Algers Iron Foundry South Boston,” engraved in such small letters as are scarcely legible without a magnifier. The indictment sets out this inscription, and the objection is, that it does not likewise set out the engraved edifice, for though the vignette is no part of the contract and need not to have been set out at all, yet if the state undertook to set out a part, it was bound, as in other cases, to set out the whole. Now it is a sufficient answer to this objection, that setting out the whole, or any part of the ornaments, whether consisting of letters, words, figures, mottoes, inscriptions, or emblems of animate or inanimate things, is mere surplusage. How the drawers of indictments first came to insert any thing found in the fanciful borderings of bank notes in the bill of indictment, I do not know, it seems from abundant caution perhaps, to have been followed by others, and there are few indictments of record in this State, which do not set out some of the letters, words or figures of the margin of the notes, yet there is no instance, even after conviction, where an objection for variance in the vignette has been taken by counsel, or where the court entertained the least doubt, although it-was impossible to look and not see the variances. The court has ever treated them as useless surplusage.
2. That the tenor of the note, as set out in the indictment, is untrue and nonsensical; That it is set out thus: “ The president, directors and company of Algers Iron Foundry, South Boston. The Lafayette Bank promise to pay,” &c. But this *511 reading takes the inscription in the vignette as part of the language of the contract, which is evidently wrong in reference to the position in which they are arranged in the note and imitated in the indictment.
3. In the original note, over the word Boston there is laid a slip of bank note paper with the word New York engraven upon it, and each end of this slip is cemented to the note, leaving the middle of it loose,'so that the upper reading is New York, and the under one is Boston, unerased and unobliterated. To give it this tenor in the indictment, the Grand Jury covered the word Boston with a slip of paper, having the words New York written on it, and attached each end of the slip to the indictment by stitches of thread. The law imperatively requires the tenor of a forged instrument to be set out in the indictment; but the ingenuity of rogues had invented a double tenor for this note, the upper one being New York and the under one Boston. If they had set out the tenor in one count to be New York, and in another count to be Boston, neither of them would have corresponded exactly with the evidence; but they have done it in the present form so truly according to the original, that no objection can possibly be taken for variance, and the prisoner has to resort to some other grounds of objection. His counsel say that such an indictment as this is without any precedent. True, but there is no precedent of such a forgery, and rather than a newly invented villainy should triumph over the law, it may be countervailed by any new precedent not contrary to any established principles. It is said, however that this form contravenes the great principle of exemplifications, for t-hat a record in this form can neither be made up nor exemplified; but this is evidently a mistake: for what the Grand Jury have done, the exemplifying clerk can do in like manner. Then it is said that the slip may be lost off. It is a sufficient answer to this that the indictment itself may also be lost, but is this any argument against finding indictments ?— If the objection proves anything, it proves too much to be sound. We are never to suppose the loss of records merely because such losses are possibilities; in presumption of law, they endure forever, It is intimated that the Grand Jury might have done better ; that they might have taken New York, which is the upper reading, for the tenor, and rejected the lower; or they might *512 have set out the original note as it was before alteration, and then have averred the manner and form in which the alteration was made. But they have not so done, and the court is not called upon to give an opinion on either of those modes, nor on the objections that might lie to them. Even if the indictment might have been so drawn, it proves nothing; for an offence may be charged several different ways, in different counts, and yet none of them be wrong. The question is whether the mode here adopted by the Grand Jury .is fatally wrong; and in my opinion it is not, either for the reasons assigned against it, or upon any principle of law. I see, therefore, no good ground for disturbing the verdict or arresting the judgment.
Dayton, J.
The defendant Robinson was tried on this indictment, at the last Esses Oyer and Terminer, &c. and found guilty of uttering a five dollar counterfeit bill on the Lafayette Bank of New York. The bill had been altered by pasting a small piece of paper (like the bill) on which was printed the word “ New York,” over the word “Boston” (which could still be seen underneath by raising up the pasted slip of paper;) and by tearing off the word “ Mass” from one corner of the bill in such a manner as to give it the appearance of having been issued by the Lafayette Bank of New York, which was a solvent institution. Whereas it had in fact been issued by the Lafayette Bank of Boston, which was insolvent. Two questions were reserved on the trial.
1. Whether the passing on the same day, of another counterfeit two dollar bill on the same bank, altered in the same manner, could be proved for the purpose of showing a “guilty knowledge,” after the defendant had been tried for passing that identical two dollar bill, and acquitted.
2. Whether the alteration was in fact material.
And on the argument in this Court, two additional objections were taken to the form of the indictment, and argued here by consent.
1. That on the face of the indictment, a slip of paper was sewed having on it, the word New York, and by raising up which, the word Boston, could be seen underneath, as on the original bank note.
*513 2. That the names of the engravers, and likewise the words, ‘Algers Iron Foundry ’ ‘ South Boston ’ — the name and place oí’ location of the foundry represented by the vignette were copied into that part of the indictment, which set out the tenor of the bill counterfeited, without making any attempt to represent the vignette itself. J
I will consider these objections in their order.
On an indictment for uttering a forged instrument or counterfeit bill, knowing it to be such, it is well settled that the guilty knowledge may be shown, and in most instances must be shown, by proof of other utterings of a like character, at or about the lime of the offence charged. The fact that the defendant had been indicted and acquitted of the other uttering, did not render the evidence illegal, though it may have weakened its force. The acquittal of the defendant may have been upon the ground that the State failed'to identify him — or to prove that ho passed the bill to the person named in the indictment. Or that it was to defraud the person so named, as alleged.
The ground work of the objection to (his evidence is, that the defendant cannot be twice jeoparded for the same offence. That having been once tried and acquitted, it is conclusive as to his innocence of the whole and every part of the offence connected with the charge, in whatever manner the same may come up. The argument is plausible, but a little reflection will satisfy us that it is not sound. If the principle be carried out, it will end either in the rejection of all evidence of other utterings, or in releasing offenders from all but one indictment, however manifold may have been their offences. If a person pass five counterfeit bills to different persons in one day, and upon the first indictment, the other four utterings be given in evidence as the only means of showing a guilty knowledge, it would bar an indictment for the other offences; the evidence of such tittering having been once received and aided in the procurement of one conviction. IVay if the doctrine be sound, in this very case, if the defendant had been convicted of passing the two dollar bill, and the passing of this five dollar bill had been given in evidence to show a guilty knowledge, it would have acquitted him from all liability upon this indictment. To this absurd conclusion, the argument will lead us; unless indeed it be alleged that a former acquittal, *514 is conclusive, though a former conviction is not so, which will hardly be pretended. The force of these pleas, is identical and grounded upon the same’ general principle of law that a man is not to be twice jeoparded for the same offence. 1 Chitty C. L. 452 462.
This rule of evidence is recognized, I believe, as well in civil as in criminal proceedings. In an action for libel or slander, other libellous matter or slanderous words, though not declared on, if referring to that charged, may it seems, be given in evidence, to show the quo animo, but not as a separate or distinct ground for damages. 2 Stark, on Ev. 870, and cases there cited. Yet so far as I know, it has never been supposed that the admission of such words or matter on the question of malice, would bar a subsequent action therefor. The evidence was not offered to convict the defendant of uttering the two dollar bill, but as a circumstance connected with others, showing him guilty of another offence. It was offering in evidence the same fact, but for a different purpose, and the former verdict did not therefore es-top an enquiry into its truth. 1 Stark, on Ev. 206-7. It was, perhaps, presumptive evidence of the defendant’s innocence, tho’ not conclusive, and was therefore rightly submitted to the jury.
It was held by Vaughn B. in the case of Rex v. Smith, 2 Carr and Payne, 633, that such evidence could iiot be received if a separate indictment were pending for the same offence. But Ido not see how we can recognize this case as law, consistently with the principle on which this kind of evidence is admitted at all. The soundness of that decision is questioned by a most able writér on criminal law. Boscoe’s E. 69, and a contrary decision was made on the same point, by Littledale, J. Kirkwood’s case, Lewin’s C. C. 103.
The second objection is, that the alteration was not material— being merely in the name of the place at which the instrument bears date. Mention was made on the argument, of the word “ Mass ” having been torn off one end of the bill; and in drawing the indictment, a piece was taken out of that part of it, in which the bill was represented and set forth, to imitate the mutilation of the original bill, but this means nothing, charges nothing. The fact of such alteration, by tearing off a word from the face of the bill, is no where set forth in the indictment. But pasting the *515 word New York over the word Boston, was a material alteration. It gave to the bill an appearance of having been issued by a solvent, instead of an insolvent institution. The word Boston was all that remained on the bill to fix its locality. If an individual give his bond, describing himself in its body as of the city of Boston, and become insolvent, after which, the holder ascertaining that a person of the same name, and of good credit, resided in the city of New York, should strike out the. residence of the actual bondsman, and insert that of the other, and then pass away the instrument as the genuine bond of the latter, and receive value for it as such, could it be doubted for a moment, whether the alteration was, or was not material ? Yet in what does that case differ from the present? This is the well known and I may almost say, the only mode of designating the location of a corporation. It apprises the holder, of the place where the bill will be paid on presentment. To common observers, the word “ New York” being conspicuous on its face, increased the value of the bill as effectually as if it had been altered to a greater amount. The case of — 2 Taunton, 328, is in point. See 2 Russel, 297, 320. To consider the alteration immaterial, would be productive of the most mischievous consequences. It would criminally, be a wrong, without a remedy.
The first objection to the form of the indictment is, that instead of setting out the bill as it appeared when falsified, the word New Yor k was sewed over the word Boston in such a manner as to present something like a facsimile of the bank bill itself. This is an awkward mode of preparing an indictment. A record, it is true, might be made up in this way, and exemplified copies of it given, but if such were presented before a judge at the Circuit, with a slip of paper sewed on its face (without some explanation aliunde the record) he would be somewhat at a loss to know what to do with it. Courts would never sanction the practice, but the record may and ought to be made up as if the word New York had beeu written on the indictment in common form. It was not necessary thus to imitate the bill itself. If the word Boston were so covered by the word New York, as to deceive common observers, it became a counterfeit, and should have been set out in its Counterfeit character alone; but if not done so as_to deceive a common observer, it was no counterfeit, and the indictment *516 could not be sustained. Still, (although this mode of preparing an indictment is not to be commended,) I cannot suppose when it is properly drawn, that it is vitiated because a part is written on a piece of paper which is fastened to it. The reason assigned for this objection is, that should the piece of paper be taken off, a perfect record would still remain. But the presumption of law is that it will remain untouched : and we are adjudicating upon it as it now is and not in reference to what it may become. A case might perhaps occur, when an indictment should be got up or put together in a manner so exceedingly loose, as would induce this court to interfere, but the present is not such a case. If this objection were carried out, and one count in an indictment should perchance be written on a separate half sheet and attached by some ligature to the other counts, it would be fatal, because if that half sheet were taken out, a perfect record would still remain !
It is not necessary, in my judgment, to express an opinion upon the remaining exception. If it were improper to set out the engraver’s name, and the title of that foundry represented by the viguette without the vignette itself, it may, I suppose be rejected as surplusage, without interfering in any way with the forged bill or indictment. It may be senseless, if read in connection with the words, of the contract, but it must not necessarily be so read; and the averments in the indictment show indeed that no connection exists.
My opinion is, that judgment should be rendered upon the verdict.
Hornblower, C. J. concurred in the foregoing opinions.
White, J. did not hear the argument, he • being at the Warren Circuit.

Judgment to be entered, for the State, by the Court of Oyer and Terminer.