**Donald J. MALCOMSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 2–177A27.**

Court of Appeals of Indiana, Second District.

June 27, 1979.

Rehearing Denied Aug. 29, 1979.

Charles Thomas Gleason, Indianapolis, for appellant (defendant below).

Theo. L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Donald J. Malcomson appeals his conviction of Uttering a Forged Instrument,[1] claiming the instru-

---

1. Ind.Code 35–1–124–1, which reads as follows:

   *Whoever falsely* makes, or assists in making, defaces, destroys, *alters,* forges, counterfeits, prints, or photographs, or causes to be falsely made, defaced, destroyed, altered, forged, counterfeited, printed or photographed, any record or authentic matter of a public nature, deed, will, codicil, lease, bond, covenant, writing obligatory, bank bill or note, check, bill of exchange, or any acceptance or indorsement of any bill of exchange, promissory note for the payment of money or other property, or any post note, acquittance or receipt either for money or property, or

   any acquittance, release or discharge of any debt, account, action, suit, demand or other thing, real or personal, or any order, warrant or request for the payment of money, or any auditor's warrant, treasury note, county order, city order, indorsement of any promissory note, draft, or order or assignment of any bond, writing obligatory, or promissory note for money or property, or any order or draft for the payment of money or property, or any lawful brand on a tobacco leaf, bacon or pork cask, lard keg or barrel, salt barrel or hay bale, or any ticket, check, order, coupon receipt for fare or pass, printed, written, litho-

ments he allegedly altered were void as a matter of law and so cannot be a proper subject of forgery, and that there was a fatal variance in the indictment.

We affirm.

## FACTS

From the record the following appear to be the facts most favorable to the State.

Malcomson was president of Abacus, Inc., a real estate development corporation which was a general partner in a limited partnership known as Mid-States, Ltd. . . . one of its projects being the promotion of an amusement park in Indianapolis, Indiana, to be known as Odyssey 2000.

In January of 1973, Malcomson approached a representative of Unicap Corporation seeking investors to purchase bank certificates of deposit (C.D.'s) in Abacus's behalf. Although these C.D.'s were not redeemable by Abacus, Malcomson indicated the presence of these certificates would give the company credibility, and make it more attractive to potential investors. Unicap did manage to have funds deposited in the Riverdale Bank (the Bank) of Illinois, but despite Malcomson's repeated efforts he was not able to secure copies of these certificates.

Meanwhile, Harold Thurman, a Florida management consultant, was given $73,000 by several individuals to be invested in certificates of deposit. However, when Thurman attempted to purchase C.D.'s from the Bank, they were returned indicating they were "in behalf of Abacus and Mid-States, Ltd." These C.D.'s, # 2290–# 2293, were promptly returned by Thurman who instructed that the C.D.'s were not to be in anyone's behalf other than the depositor. However, ten days later the replacement C.D.'s # 2321, # 2404, # 2405, were again received containing the same incorrect language. Finally on the third attempt the Bank correctly issued C.D.'s # 2505, # 2506, # 2507, # 2527.

On April 12, 1974, two of the investors in Abacus and Mid-States, Ltd., became concerned because of newspaper articles indicating Abacus might be in financial difficulties. They met with Malcomson who said that their funds were safely invested in C.D.'s in the Riverdale Bank. He then displayed several photocopies of Riverdale Bank C.D.'s, including # 2505, # 2506, # 2507 and # 2527, which had been altered to show that "Abacus of Ind. in behalf of Abacus & Mid-States, Ltd., had deposited in this bank Fifty Thousand dollars . . . payable to Abacus of Ind., Inc." The certificates of deposit represented by the photocopies were not signed by the cashier in the space provided for that purpose; and therefore had no validity under Ind.Code 26–1–3–104.[2] Nevertheless, after a cursory examination of the documents, the investors were apparently satisfied and did not withdraw their money from the venture.

Receivership followed.

graphed or engraved, issued by any railroad or other transportation company or by the manager, lessee, agent or receiver thereof, or any plat, draft or survey of land, or transfer or assurance of money, stock, goods, chattels, or other property whatever, or any letter of attorney, or any power or authority to receive money, or to receive and transfer stock or annuities, or to let, lease, dispose of, alien or convey any goods or chattels, lands or tenements, or other estate, real or personal, certificate of a justice of the peace or other public officer, or *any* other *instrument in writing, with intent to defraud any person*, body politic or corporate, *or utters* or publishes as true *any such instrument* or matter,

*knowing the same to be* false, defaced, *altered*, forged, counterfeited, falsely printed or photographed, with intent to defraud any person, body politic or corporate shall, on conviction, be imprisoned in the state prison not less than two [2] years nor more than fourteen [14] years, and fined not less than ten dollars [$10.00] nor more than one thousand dollars [$1,000]. (Emphasis Supplied)

2. Ind.Code 26–1–3–104 reads as follows:
   Any writing to be a negotiable instrument within this article [chapter] must
   a.) be signed by the maker or drawer; and

   .  .  .  .  .

   Also see Ind.Code 26–1–3–401.

Malcomson was convicted of two counts of Uttering a Forged Instrument. Count II is typical: [3]

The Grand Jurors aforesaid, upon their oaths aforesaid, do further say and charge that Donald J. Malcomson, the President of Abacus of Indiana, Inc., on or about the 12th day of April, A.D.1974, at and in the County of Marion and in the State of Indiana, did then and there unlawfully, knowingly, feloniously and fraudulently utter, publish, pass and deliver to one R. Michael Fox, as true and genuine, a certain set of false, forged, altered, counterfeited and defaced negotiable instruments, namely, "Certificates of Deposit" purportedly issued by the Riverdale Bank of Riverdale, Illinois, in and of Abacus of Ind. in behalf of Abacus & Mid-states, Ltd. in the following to-wit:

RIVERDALE BANK
Riverdale Illinois,
May 9th, 1973

Abacus of Ind. in behalf of Abacus & Midstates Ltd. has deposited in this bank Fifty thousand dollars and 00/100 Dollars $50,000 payable to the order of Abacus of Ind., Inc. in current funds on the return of the certificate properly endorsed 12 months after date with interest at the rate of 7% per cent per annum for the time specified only.

with the intent feloniously, falsely and fraudulently to defraud R. Michael Fox, the said Donald J. Malcomson well knowing the said negotiable instruments to be false, forged, altered, counterfeited and defaced, then and there being contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Indiana.

## ISSUES

Following his conviction of Uttering a Forged Instrument Malcomson raises two issues on appeal:

(1) May a conviction for uttering a forged instrument be based upon an instrument which has no legal validity?

(2) Was the information defective because it incorrectly characterized the C.D.'s involved as "negotiable" instruments?

PARTIES' CONTENTIONS—Initially, Malcomson claims that the traditional rule in forgery cases is that no conviction may be based upon a document which has no legal validity. He claims that without facial authenticity, a document is incapable of being used to defraud and the photocopied certificates involved were void on their face because there was no validating signature.

The State replies that the altered Certificates of Deposit appeared to have validity and would have misled an average person and that the intent of the forgery statute is to protect all persons—the ignorant as well as the informed—from deception by the unscrupulous.

Second, Malcomson contends that the indictment which charges that he altered negotiable instruments is incorrect because the unsigned documents were not negotiable. This, he claims, creates a fatal variance between the instruments and the evidence.

The State replies that there is no requirement that the instrument be negotiable to support a conviction for Uttering a Forged Instrument. Therefore, use of the word negotiable was harmless surplusage.

## DECISION

### ISSUE ONE

CONCLUSION—A conviction for Uttering a Forged Instrument may be based upon alteration of a document which has only apparent legal validity.

■ This case is a rarity because it places in delicate balance the question of whether one may be convicted of Uttering a Forged Instrument by altering a document which has no legal efficacy although it be contrived to have the appearance of validity. Indiana has not decided this precise point,

3. Each count contained each C.D. which was apparently forged. Malcomson was charged with a separate count for each person he defrauded.

and it has rarely been discussed in other jurisdictions. But there has been considerable discussion in years gone by as to whether a conviction for forgery (a distinct but closely related crime) may be based upon a facially invalid document.

The majority rule has been that a conviction for forgery may not be supported unless the document appears to be valid. Over seventy years ago *State v. Cordray* (1906), 200 Mo. 29, 98 S.W. 1, clearly enunciated the rule:

> Both at common law and in the highest courts of the several states of the Union, it has uniformly been held that, in order to be the subject of forgery, the instrument upon its face *must, if it were genuine, be of some apparent legal efficacy* for injury to another, *and if, on its face, it is utterly valueless* and of no binding force or effect for any purpose of harm, liability, or injury to any one, *it cannot be the subject of forgery.* (emphasis supplied)

A more recent case is *Smith v. State* (1969), 7 Md.App. 457, 256 A.2d 357:

> Forgery has been defined as a false making or material alteration, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability. More succinctly, forgery is the fraudulent making of a false writing having apparent legal significance. It is thus clear that one of the essential elements of forgery is a writing in such form as to *be apparently of some legal efficacy and hence capable of defrauding or deceiving.* Perkins on Criminal Law, pages 291–294; Clark and Marshall

Crimes, (Sixth Edition) Section 12.35; Wharton's Criminal Law and Procedure (Anderson Edition) Sections 641, 643; 36 Am.Jur.2d Forgery, Section 21. (emphasis supplied)

.   .   .   .   .

In *Arnold v. Cost*, 3 Gill & J., 219, and *Laird v. State*, 61 Md. 309, it was held in effect that a person cannot be convicted of the forgery of a paper absolutely invalid upon its face and which cannot operate to the prejudice of another. If then the instrument is entirely valueless on its face and of no binding force or effect for any purpose or harm, liability or injury to anyone, all authorities agree it cannot be the subject of forgery.[4]

To the same effect is *State v. Imboden* (1900), 157 Mo. 83, 57 S.W. 536, another Missouri case in which their Supreme Court reversed the forgery conviction of a man who tried to cash an unsigned bank draft, concluding: "Forgery cannot happen in the case of an unsigned paper. 1 Wharton Criminal Law (10th Ed.) § 698 and cases cited."[5]

This line of cases was carried to extreme in *Williams v. State* (1970), 333 So.2d 610, in which the Alabama Criminal Appeals Court vacated the conviction of a man who forged a check on Sunday, reasoning that as writing a check on Sunday is prohibited under State law, it was void on its face and not a proper basis for the crime of forgery.[6]

The weakness of these cases is that they are devoid of any meaningful rationale. They simply rhetorically conclude that an invalid document may not support a forgery

4. See, e. g., *People v. West* (1939), 34 Cal. App.2d 55, 93 P.2d 153; *People v. Adams* (1921), 300 Ill. 20, 132 N.E. 765 (err. dismd) (1923), 260 U.S. 759, 43 S.Ct. 249, 67 L.Ed. 500; *Com. v. Davis* (1922), 196 Ky. 13, 244 S.W. 62; *Re Farrell* (1907), 36 Mont. 254, 92 P. 785; *Boyer v. State* (1939), 68 Okl.Cr. 220, 97 P.2d 779; *Com. v. Brown* (1929), 96 Pa.Super. 13; *Williams v. State* (1935), 128 Tex.Cr.R. 631, 83 S.W.2d 337. See generally 174 A.L.R. 1300 and cases cited therein.

5. See also *Commonwealth v. Davis, supra,* which reversed a forgery conviction because

the altered pay voucher had not been signed by the chairman of the school board as was obviously required by the blank space left for that signature.

6. See also *Poe v. People* (1967), 163 Colo. 20, 428 P.2d 77, in which it was determined that a blank but fraudulently signed "power of attorney" was not a proper subject of forgery because "it was not capable of being used in the condition it was in when he parted company with it."

conviction because it cannot in fact be used to defraud. They take no account whatsoever of an appearance of validity resulting from a calculated design to deceive the victim.

We find the minority rule to be more persuasive. In *State v. Schultz* (1976), 71 N.J. 590, 367 A.2d 423, a police officer cashed a check written by a traffic offender to the "Municipal Court," which was endorsed by one "Michael Arnold." The charge of forgery was dismissed by the trial court because endorsement by "Michael Arnold" of a check made out to the "Municipal Court" did not affect the check's negotiability. However, the Supreme Court of New Jersey reinstated the indictment saying:

> It is our view, moreover, that the legislative intention, . . ., was to protect laymen of all degrees of legal sophistication from the fraudulent making of a false or fictitious writing. . . . The inferential purpose of the present endorsement was to induce Mr. Lupi to accept and cash the check, and the jury might have found that defendant believed Lupi would be more likely to be willing to cash the Colfax check with a signature—any signature—on its back than without it. So viewed, we regard the defendant's intent and act as fairly within the protective orbit of the statutory policy.

.     .     .     .     .

As was said by the former Supreme Court well over a century ago: *"The law (of forgery) is to protect the mass of society, and it matters not that a few knowing men are safe." State v. Robinson and Chittendon,* 16 N.J.L. 507, 510 (Sup.Ct.1838).

.     .     .     .     .

*If the author of the false writing has fraudulent intent and if the writing is false or fictitious and has the capacity to have been relied upon as legally signifi-* *çant, the crime is complete.* (emphasis added) 367 A.2d at 428.

Indiana's historical position in this controversy is not readily ascertainable. The Indiana statute (Ind.Code 35–1–124–1) [7] defining both forgery and uttering a forged instrument does not intimate (nor have any of its predecessor statutes) that a writing must appear to be technically perfect before it can be the basis of forgery (or uttering).

Similarly, the Indiana cases which have discussed the subject, although paying homage to the majority rule, have never applied it. Thus in *Garmire v. State* (1886), 104 Ind. 444, 4 N.E. 54, the Supreme Court held, "[I]t is not necessary that it should be shown to be a perfect instrument." That case further held that it was sufficient to constitute forgery if the altered instrument "bears such a resemblance to the document it is intended to represent as is calculated to deceive." Also it has been said that "An instrument which upon its face does not appear to have any legal validity, . . . is, however, the subject of forgery where extrinsic facts exist by which the holder of the paper might be enabled to defraud another." *State v. Floyd* (1907), 169 Ind. 136, 81 N.E. 1153, 1154.

Malcomson submitted to investors altered documents which purported to be genuine, doing so with the intent to deceive them knowing the certificates of deposit to be false. He thereby brought himself within the statute.

In a day of increased sophistication and business complexity acceptance of the old unsupportable majority rule is intolerable. A predator who preys on the unwary by means of trickery and deceit may not excuse his culpable conduct on the basis of the gullibility of his victim. It is consistent with the intent of the statute to construe it as implying that the altered instrument need not be technically perfect . . . the appearance of validity is enough. The *Garmire* court, *supra,* put it this way:

---

**7.** See Footnote 1.

One who intends to commit a felony, and succeeds in accomplishing his evil purpose, cannot escape the consequences of his crime by denouncing as stupid the man who trusted him. Nor can he be heard to aver that if the man whom he intended to defraud, and whom he did defraud, had been more vigilant, the crime could not have been perpetrated. Felons cannot escape punishment upon the ground that the person whom they deliberately set to work to wrong was lacking in care and vigilance. 104 Ind. at 446–447, 4 N.E. at 56.

ISSUE TWO

CONCLUSION—Use of the term "negotiable instrument" did not create a fatal variance in the information.

 Ind.Code 35–3.1–1–5 provides:

a.) An indictment or information which charges the commission of a crime shall not be dismissed but may be amended on motion by the prosecutor at any time because of any immaterial defect, including:

(3) The presence or absence of any unnecessary allegation;

.    .    .    .    .

(9) Any other defect which does not prejudice the substantial rights of the defendant.

This statute bolsters the rule found in the nearly identical case of *Myers v. State* (1884), 101 Ind. 379. In *Myers*, the Supreme Court rejected a motion to dismiss a forgery conviction in which there was found an inconsistency in the indictment:

Here, the written instrument charged to have been forged is set out in full, with the necessary averments as to who were intended by the names stated in the instruments. There is no doubt in the particular contended for, that could, by any possibility, affect the substantial rights of appellant upon the merits. 101 Ind. at 380–381.

In a more recent case, *Heflin v. State* (1977), Ind., 370 N.E.2d 895, 897, the Supreme Court observed, "This Court has held

that unnecessary verbiage is not prejudicial unless it is manifestly detrimental and wholly foreign to the subject matter of the information." See also *Kelsie v. State* (1976), Ind., 354 N.E.2d 219; *Doss v. State* (1971), 256 Ind. 174, 267 N.E.2d 385.

In this case the indictment stated the C.D.'s were negotiable instruments, although there is no requirement under the statute that an instrument be "negotiable" before it may be the basis of forgery. As the indictment specifically detailed the document and the event upon which these charges were brought, Malcomson could not have been misled by the faulty language. The use of the term "negotiable instruments" did not "prejudice the substantial rights of the defendant," and was mere surplusage.

Affirmed.

LOWDERMILK, P. J. (by designation), and SULLIVAN, J., concur.