## METROPOLITAN NAT. BANK OF MIN-NEAPOLIS v. NATIONAL SURETY CO.

District Court, D. Minnesota, Fourth Division.
April 6, 1931.

Timerman & Vennum, of Minneapolis, Minn., for plaintiff.

Doherty, Rumble, Bunn & Butler, of St. Paul, Minn., for defendant.

SANBORN, District Judge.

At the close of the testimony, the plaintiff and the defendant each moved for a directed verdict, whereupon the court discharged the jury and took the case under advisement.

The facts are as follows: The plaintiff is a national bank; the defendant, a corporation organized under the laws of New York. On November 25, 1929, the plaintiff and the defendant entered into a contract referred to as a "Securities Bond, Standard Form No. 1 Revised." This contract indemnified the plaintiff against losses sustained by reason of taking and applying as collateral any securities forged, counterfeited, raised or otherwise altered, or lost or stolen. The bond provided that the word "securities" should include warehouse receipts and bills of lading, except those covering motor vehicles. Between April 1, 1930, and June 1, 1930, the plaintiff discounted and became the owner and holder, for value, of seven drafts aggregating $11,816, drawn by the Judith Milling Company, of Lewistown, Mont., upon various drawees. Attached to these drafts were forms of bills of lading describing certain flour and containing the names of supposed consignees. The plaintiff had for several years prior to the payment of these drafts accepted similar drafts with bills of lading attached, drawn by the milling company. The plaintiff, in paying the seven drafts referred to, supposed that the papers attached to them were genuine bills of lading and that the flour described in the bills had been actually delivered to the carriers whose names appeared in print upon the forms. None of these bills were signed by the agent of the carrier named on the form, and the flour described therein was never delivered to the carrier. The form used in each instance was that of the uniform straight bill of lading prescribed by the Interstate Commerce Commission, and was complete in every respect, except that it did not contain the signature of the carrier's agent, and the space for such signature was left blank. All of the drafts referred to were purchased by the plaintiff in good faith and without knowledge that the flour described therein had not been delivered

to the carrier, and without noticing that the forms were unsigned by the agent of the carrier. The Judith Milling Company, shortly after these drafts were purchased, went into bankruptcy, and the loss which the plaintiff has directly suffered through the purchase of these drafts exceeds the sum of $5,000, the maximum amount for which the defendant is liable under its bond.

The plaintiff contends that the unsigned bills of lading were counterfeits, and that it is therefore entitled to recover from the defendant. The defendant claims that, while the forms attached to the drafts were used for the purpose of defrauding the plaintiff, they were not counterfeits, and it therefore denies liability.

"A counterfeit is a likeness or resemblance intended to deceive and to be taken for that which is original and genuine." 15 C. J. 357.

"The term 'counterfeit' both by its etymology and common intendment, signifies the fabrication of a false image or representation. In its broadest sense counterfeiting means the making of a copy without authority or right, and with a view to deceive or defraud by passing the copy as original or genuine. As thus defined counterfeiting includes forgery. But the term 'counterfeiting' as used in this article and as ordinarily understood in law is applied to the making and uttering of false money, or the forging of bank notes which are the equivalent of money." 7 R. C. L. 913.

An unsigned deed, mortgage, note, draft, check, warehouse receipt, bond, stock certificate, bill of lading, or other instrument, the validity of which is dependent upon the signature of the person who makes or issues it, is susceptible of use as an instrument of fraud, but is not a counterfeit. It is not a false image or resemblance. It actually purports to be nothing more than what it is, an invalid instrument, because unsigned. It does not of itself deceive any one. The person who uses it to defraud does the deceiving by representing it to be something other than it actually pretends to be. He represents that it is signed, when the instrument itself contradicts him.

By attaching the unissued bills of lading here involved to drafts and sending them to the bank, the Judith Milling Company represented them to be issued bills of lading. The bank relied upon the representations, and was defrauded. The contract here involved did not pretend to indemnify the bank from loss because of the acceptance of unsigned securities as valid.

I have found no case directly in point, but see United States v. Williams (D. C.) 14 F. 550; United States v. Sprague (D. C.) 8 F. 828; Wiggains v. United States (C. C. A.) 214 F. 970.

Finding the facts and the law to be as above stated, it is ordered that a judgment of dismissal be entered in favor of the defendant, with costs.

The plaintiff is allowed an exception to the denial by the court of its motion for a directed verdict and for judgment in its favor made on the sole ground that the evidence will support no other conclusion.