No. 22273.

MARVIN POE *v.* THE PEOPLE OF THE STATE OF COLORADO.
(428 P.2d 77)

Decided May 29, 1967.

Murray, Hecox and Tolley, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, James F. Pamp, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice Day.

We will refer to the plaintiff in error as Poe or as defendant and to defendant in error as the People or district attorney.

From a judgment of convictions of the offenses of larceny by bailee and forgery and from concurrent sentences imposed by the court on each offense, Poe brings this writ of error, contending:

I.

That the evidence is insufficient to support conviction

of either of the offenses and that the court should have directed verdicts of acquittal as to both.

## II.

That there was prejudicial error by reason of the admission into evidence of other so-called similar transactions on which he was not being tried, compounded, he complains, by the failure of the court to give an instruction as to the limiting effects of such evidence, plus improper comments thereon in closing argument by the district attorney.

## III.

That the instruction on intent was confusing, misleading and contained matters not in evidence.

We will take up the points in the above order.

## I.

For a determination of the sufficiency of the evidence to support the convictions, a recital of pertinent facts is necessary.

The record reflects that Poe was in the business of selling automobiles. In the course of his business he was obtaining financing from the Fountain Valley Bank, and offered as security to the bank "floor cars" i.e., cars which he owned and was offering for re-sale.

On February 12, 1965, one L. L. Johnson, also known as Leah L. Rhodes, left her car with Poe on an oral agreement whereby he was to dispose of her vehicle on a consignment basis. Mrs. Johnson left the title to the car with Poe, but she did not sign that portion on the back of the title providing for assignment of the title to the car and the owner's interest therein. It was agreed by Mrs. Johnson and Poe that her assignment of title would not take place until after the car was sold, and that upon her signing the title she would receive the proceeds for the car. The price agreed upon to be remitted to Mrs. Johnson was $475.

Three days after Poe received Mrs. Johnson's car, he negotiated a loan thereon from the Fountain Valley Bank, signed a note and executed a chattel mortgage on

the Johnson car. The money obtained from this loan was used to release the security on another car which had been financed by the Fountain Valley Bank and which had been sold. The Fountain Valley Bank would not release its security on or title to the other car until it had obtained the substitute security; hence the reason for the use by Poe of Mrs. Johnson's automobile. In addition to the chattel mortgage, Poe also gave to the Fountain Valley Bank a power of attorney purportedly signed by Mrs. Johnson and furnished with it the title to the car, also with a signature represented to be Mrs. Johnson's in the place provided for the assignment of the title. Both papers were in blank except for the signature.

The power of attorney was not notarized, and the president of the bank, noting this deficiency, drove to Poe's place of business and called Poe's attention to this oversight. Poe thereupon had his wife notarize the signature. Poe became involved in financial difficulties, and, as a result, the Johnson car, as well as other cars, were foreclosed upon. The bank then took possession of them. The bank, in order to complete the records on the security transaction, then filled in the blank portions of the power of attorney, designating Marvin Poe as the person to whom the power had been given.

When both the power of attorney and the title sought to be transferred were presented by an employee of the bank to the county clerk and recorder's office for recording, the employee was informed that the title assignment had to be executed by Poe because the power of attorney designated the latter as the attorney in fact. Whereupon the bank employee, designating himself as Poe's agent, signed defendant's name to the document in the presence of the clerk and recorder who acted as the notary to verify the execution of the assignment to the bank.

There is no doubt from the record that Mrs. Johnson did not sign the power of attorney nor the assignment of the title; nor did she authorize anyone to execute the

papers for her. She did not receive any money for her car.

From the above facts we hold that the evidence was sufficient to present to the jury the question of Poe's guilt on the charge of larceny by bailee. The agreement with Poe was a bailment. Title to the car remained in Mrs. Johnson, and the vehicle was being held by Poe for sale with the duty to account for the proceeds thereof to Mrs. Johnson. That Poe intended to convert Mrs. Johnson's property to his own use by pledging it as security for a loan and using the proceeds of the loan for the payment of another of his obligations could be inferred from his executing a chattel mortgage representing himself as the owner of the car and from his furnishing the title and power of attorney to the bank. All of these actions were not authorized by Mrs. Johnson. Conversion of the property of another contrary to the contract of bailment without the consent and against the will of the owner with intent to deprive the owner of his property, satisfies all of the elements of the crime of larceny by bailee. C.R.S. 1963, 40-5-13. *Lewis v. People,* 114 Colo. 411, 166 P.2d 150.

As to the crime of forgery under the above facts, that offense was not established by the evidence, and the court should have directed a verdict of not guilty as to that particular count in the information. It was not established by any competent evidence that it was Poe who signed Mrs. Johnson's name to the assignment of the title or to the power of attorney. For the offense, therefore, to be made out, it is necessary that the instrument be such that, if genuine, would be of some legal efficacy, real or apparent. As this court stated in *People v. McDonald,* 53 Colo. 265, 125 P. 114,

"The test is, whether it had apparent legal efficacy and was capable of being used so as to prejudice others."

Neither the power of attorney, upon which Mrs. Johnson's "unnotarized" signature appeared, nor the title, with her signature in the place provided for the

assignment, had any legal efficacy when it left the possession of Poe. It was not capable of being used in the condition it was in when he parted company with it. Its legal efficacy was supplied by filling in the blanks, and Poe's signature, a necessary element in making one of the papers legally sufficient, was supplied by a bank employee purporting to act as agent for Poe, when, in fact, he was agent for the bank.

II.

On the matter of the evidence before the jury of other transactions, this evidence was not introduced by the People for the usual purpose of showing intent, design and motive in committing the charged unlawful act. The other transactions of which Poe complains were elicited by him upon cross-examination of one of the officials of the Fountain Valley Bank. On redirect examination the court scrupulously limited the district attorney in his questioning to only those matters that had been touched upon in cross-examination. In questioning the bank official about various transactions, there was no hint that they involved the violation of any law. As a matter of fact, it appears from all the questioning that Poe's counsel was attempting to portray to the jury a regular course of dealing by going into the many financing transactions between Poe and the bank. Not only was the matter first introduced on cross-examination of the witness when he was used by the People, but later the same witness was called as a defense witness and the question concerning other transactions was brought out on direct examination. This, of course, was followed by cross-examination by the district attorney. In the posture in which this matter came before the jury, it would be incongruous — if not ridiculous — for the court to have instructed the jury that the evidence introduced was for the purpose of showing intent, design and motive. Although Poe's counsel asked for such instruction, it was properly refused by the court. When the district attorney com-

mented on the transaction in his closing argument, no objection was made to the comments. Moreover, in examining the argument, we do not find the comments contained therein to be prejudicial.

III.

The court gave to the jury the following instruction on intent:

"You are instructed that intent is manifested by the circumstances connected with the perpetration of an offense and the sound mind and discretion of the person accused.

"A person shall be considered of sound mind who is neither an idiot, nor lunatic, nor affected with intoxicating drink which renders him incapable of forming in his mind the specific intent of the crimes charged as defined elsewhere in these instructions before or during the offense, or affected with insanity.

"Where a crime consists of an act combined with a specific intent, as the crimes herein charged, the intent is just as much an element of the crimes as is the act. In such cases the requisite specific intent must be shown as a matter of fact, either by direct or circumstantial evidence. Proof of the commission of the act alone does not warrant the presumption that the accused had the requisite specific intent."

Much of the instruction follows the statutory language contained in C.R.S. 1963, 40-1-2; it has been given as a stock instruction in felony cases since the statute was first enacted. Poe now contends that since there was no evidence introduced as to the sound mind of Poe or whether he was or was not an "idiot" or "lunatic" or "affected with intoxicating drink," it was error to inject these elements into the case through the instruction. In support of his argument, Poe cites *Gill v. People,* 139 Colo. 401, 339 P.2d 1000, and other cases wherein we have set forth sound guideposts in the giving of instructions to the effect that the instructions should be geared to the case which is being tried; and, that

"Mere abstract statements of law or exerpts from court opinions generally should not be given as instructions."

In this enlightened era, when so much is now known by the general public in connection with problems of mental health and programs instituted for the treatment of the mentally ill and the chronic alcoholic, this instruction would appear to be antiquated; it would seem that the jury need not be told how to recognize one of sound mind. Nevertheless, we believe that in order for a jury to make a determination of the necessary element of intent in the commission of a crime, they must be told that the accused must be capable of forming an intent. The defendant, in this case, was proven to be a person of sound mind by the mere absence of any proof of those factors which would render him incapable of forming the necessary intent. Furthermore, even though evidence was not introduced directly and though the presumption of sound mind was not overthrown, it would have been manifestly more prejudicial to the defendant for the court to instruct the jury categorically that he was shown to be and was, in fact, of sound mind. We see no prejudice in the instruction.

The judgment is affirmed on the one ground of larceny by bailee but reversed on the conviction of forgery, and remanded to the trial court to vacate the judgment and sentence on the charge of forgery.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE PRINGLE and MR. JUSTICE HODGES concur.