JOHN JAMES SMITH *v.* STATE OF MARYLAND

[No. 388, September Term, 1968.]

*Decided August 11, 1969.*

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Irving B. Klitzner* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Charles Hennick* and *David R. Eaton, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Maryland Code, Article 27, Section 44, provides in part that if any person "shall falsely make, forge or counterfeit * * * any * * * bill of exchange * * * with intent to defraud any person whomsoever, [he] shall be deemed a felon * * *."

Appellant was indicted under this statute, the indictment charging that on May 11, 1968 he did, with intent feloniously to defraud, "falsely make, forge, and counterfeit a certain bill of exchange, to wit, * * * a certain *blank* check of Arundel Engineering Construction Co., Inc., * * * drawn on the Maryland National Bank, Baltimore, Maryland." [1] (Emphasis Supplied.)

The evidence at the trial showed that on May 11, 1968, the police, acting under a valid search and seizure warrant, searched appellant's living premises and seized vari-

---

1. Indictment #3767.

ous printing machines and implements utilized in their operation, including a mechanical checkwriter [2] and a printer's typeset containing composed type. At the request of the police, appellant ran off an imprint from the composed type, revealing a blank check purportedly that of the Arundel Engineering Construction Co., Inc., drawn on the Maryland National Bank of Baltimore, Maryland. The blank check form contained the usual bank check numbers and purported on its face to be drawn against Arundel's payroll account in the Bank. The space on the check for the payee's name, the amount of money for which drawn, and the authorized signature of the payor were all blank. The evidence showed that appellant did not have permission to print checks for Arundel, and that Arundel had no account with the Maryland National Bank.

Appellant, an accomplished printer, admitted composing the type for the blank Arundel checks. He testified that he was preparing to publish a book on the detection of check forgeries and had no intention of attempting to negotiate any of these checks. The evidence showed that no checks of Arundel made from the plates seized from appellant were ever passed or negotiated.

Appellant was also separately charged under Section 44 with having falsely made, forged and counterfeited on various dates five checks of Spring Grove Hospital, payable to designated individuals in specified amounts, as set forth in the indictments, all checks being drawn on the American National Bank and signed by L. B. Smyth.[3] The evidence showed that these checks had been forged and were completely bogus, that they were dishonored because Spring Grove Hospital maintained no account with the American National Bank, and the payor L. B. Smyth was unknown to the Hospital authorities and hence not an authorized signature.

---

2. For imprinting the amount of money on the check.
3. Indictments #3763-3766, inclusive and #3770.

Through the testimony of an F.B.I. expert, the State showed that the composed typeface seized by police from appellant's residence on May 11, 1968, when compared with the print of the Spring Grove checks, revealed certain similar defects in the letter faces, indicating that the Arundel and Spring Grove checks were made from the same plates.

Appellant denied any responsibility for or knowledge of printing, forging or uttering the Spring Grove checks and no evidence was adduced to show any connection between L. B. Smyth and the appellant.

At the conclusion of the trial the court, sitting without a jury, concluded that appellant made all the checks in question with the printing equipment seized from him on May 11, 1968. The court convicted appellant under all six indictments with having falsely made, forged and counterfeited each of the six checks, as charged in the respective indictments. Appellant was sentenced under each indictment to concurrent terms of four years under the jurisdiction of the Department of Correction.

On this appeal, appellant contends that the evidence was insufficient to convict him of any of the offenses. We agree.

Section 44 was originally enacted by Chapter 75 of the Acts of 1799 which was entitled "An Act for the more effectual preventing of forgery." In its original form, the Act provided that any person shall be deemed a felon who "shall falsely make, alter, forge or counterfeit any * * * bill of exchange * * *." Although amended a number of times since its original enactment, the basic substance of Section 44 is the same now as it was in 1799.

Forgery has been defined as a false making or material alteration, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability. *Reddick v. State*, 219 Md. 95, and authorities cited at page 98. More succinctly, forgery is the fraudulent making of a false writing having apparent legal significance. *Nelson v. State*, 224 Md. 374.

It is thus clear that one of the essential elements of forgery is a writing [4] in such form as to be apparently of some legal efficacy and hence capable of defrauding or deceiving. *Perkins on Criminal Law,* pages 291-294; Clark and Marshall *Crimes,* (Sixth Edition) Section 12.-35; *Wharton's Criminal Law and Procedure,* (Anderson Edition) Sections 641, 643; 36 Am.Jur.2d *Forgery,* Section 21.[5] In *Arnold v. Cost,* 3 Gill & J., 219, and *Laird v. State,* 61 Md. 309, it was held in effect that a person cannot be convicted of the forgery of a paper absolutely invalid upon its face and which could not operate to the prejudice of another. If then the instrument is entirely valueless on its face and of no binding force or effect for any purpose of harm, liability or injury to anyone, all authorities agree that it cannot be the subject of forgery. See Annotation, "Invalid instrument as subject of forgery," 174 A.L.R. 1300-1338.

By common definition forgery is false making, *Reddick v. State, supra,* and as used in Section 44, we think the terms "falsely make" and "forge" are synonymous, both describing a spurious or fictitious making relating to the genuineness of execution of an instrument. See *Marteney v. United States,* 216 F. 2d 760, 763 (10th Cir.). Similarly, the term "counterfeit" in common parlance signifies the fabrication of a false image or representation; counterfeiting an instrument means falsely making it; and in its broadest sense it means the making of a copy without authority or right and with a view to deceive or defraud by passing the copy as original or genuine. 20 Am.Jur.2d *Counterfeiting,* Section 1; *Perkins on Criminal Law,* page 307. It was noted in *Arnold v. Cost, supra,* that "the counterfeiting of any writing with a fraudulent intent whereby another may be prejudiced, is

4. Such a writing is not limited to handwriting but includes typewriting, printing or engraving. See *Nelson v. State, supra.*
5. If there is a reasonable possibility that the false writing or instrument may operate to cause injury, it is sufficient to constitute forgery, even though no actual injury is caused. *Reddick v. State, supra.*

forgery at common law." The words "forged" and "counterfeited" as used in a statute creating the offense of passing "forged, counterfeited or falsely altered instruments" have been held to be synonymous. *Hobbs v. State,* 9 Mo. 855. And in *Greathouse v. United States,* 170 F. 2d 512 (4th Cir.), it was held that under the National Stolen Property Act which penalizes the transportation of "falsely made, forged, altered or counterfeited securities" the quoted words were ejusdem generis and usually employed to denounce the crime of forgery. In light of these principles, and bearing in mind that as originally enacted in 1799, Section 44 was entitled "An Act for the more effectual preventing of forgery," we think the terms "falsely make, forge or counterfeit," as used in the Section, are virtually synonymous and were collectively intended to proscribe the crime of forgery.

While a check drawn on a bank may constitute a bill of exchange within the meaning of Section 44, *Laird v. State, supra, Hawthorn v. State,* 56 Md. 530, the Arundel check (Indictment #3767) was entirely blank in all its operative parts. It contained no payee's name, no payor's signature, no date, and specified no amount. In this condition, it obviously was an instrument without legal efficacy as a bill of exchange. Consequently, it was not a writing capable of defrauding and hence was not a forgery under Section 44. See *State v. Imboden,* 57 S. W. 536 (Mo.), a case involving an allegedly forged, counterfeited and falsely made draft which, because it contained no payor's signature, the court found not to be a forgery; and *Williams v. State,* 51 Ga. 535, holding that where a negotiable instrument on its face contained no payee's name, it was so incomplete as to be incapable of defrauding and consequently not the subject of forgery. See also Annotation, 174 A.L.R. 1300, and compare *Draper v. State,* 231 Md. 423.

And for the same reasons that the blank Arundel check was not a forgery, neither was it a counterfeit within the meaning of the statute, the terms "forge" and "counter-

feit," as heretofore indicated, being synonymously employed.[6]

We make the additional observation that it was at the direction of the police that appellant ran off an imprint of the blank Arundel check. In no event could appellant be convicted of having falsely made, forged or counterfeited a document which he reproduced under these circumstances.

While there was evidence to show inferentially that the blank check forms used in connection with the five Spring Grove checks were printed by the appellant, and that these checks subsequently were the subject of forgeries, there was no evidence to show that appellant was responsible for, or had any connection with, the authorizing signature "L. B. Smyth," nor was there any showing that he endorsed, negotiated, or attempted to endorse or negotiate the checks. At most, the evidence showed that appellant composed the type from which the blank Spring Grove checks were subsequently imprinted. Under these circumstances, the judgment of the trial judge

---

6. In *Metropolitan National Bank v. National Surety Co.*, 48 F. 2d 611, involving an indemnification contract covering losses sustained by reason of forged or counterfeited Bills of Lading, it was held that where such an instrument, although otherwise complete on its face, lacked a signature essential to its validity, it was not a counterfeit. The court there said: (p. 612)

"The term 'counterfeit' both by its etymology and common intendment, signifies the fabrication of a false image or representation. In its broadest sense counterfeiting means the making of a copy without authority or right, and with a view to deceive or defraud by passing the copy as original or genuine. As thus defined counterfeiting includes forgery. * * *

"An unsigned deed, mortgage, note, draft, check, warehouse receipt, bond, stock certificate, bill of lading, or other instrument, the validity of which is dependent upon the signature of the person who makes or issues it, is susceptible of use as an instrument of fraud, but is not a counterfeit. It is not a false image or resemblance. It actually purports to be nothing more than what it is, an invalid instrument, because unsigned. It does not of itself deceive anyone. The person who uses it to defraud does the deceiving by representing it to be something other than it actually pretends to be. He represents that it is signed, when the instrument itself contradicts him."

was clearly erroneous in having convicted appellant of having forged these checks.

> *As to indictment #3767:*
> *judgment reversed.*
> *As to indictments #3763-*
> *#3766, inclusive, and #3770:*
> *judgments reversed; cases*
> *remanded for a new trial.*