**Richmond**

ABDULLAH IMAM MUHAMMAD

v.

COMMONWEALTH OF VIRGINIA

No. 0547-90-2

Decided September 24, 1991

COUNSEL

Elizabeth Dashiell Scher (Morchower, Luxton and Whaley, on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

BAKER, J.—Abdullah Imam Muhammad (appellant) appeals from his bench trial convictions by the Circuit Court of Henrico County (trial court) for (1) forgery of a check and (2) uttering that forged check. The issue presented by this appeal is whether the evidence is sufficient to support the convictions.

On September 21, 1989, appellant presented a check to a grocery store clerk in payment for groceries he had selected, intending that any balance above the cost of the purchased items be delivered to him in cash. The check, in blank form, had been stolen from Interstate Pallet Co., Inc. (Interstate). The company's name and address were imprinted at the top left corner.[1] A printed serial number, 13691, appeared at the top right corner. On the line for the amount to be paid, the sum of $311.54 had been imprinted by a check-writer machine. Appellant's name and address appeared on the front as the payee. The line at which the drawer's signature normally appears did not contain a signature. The back of the check contained a handwritten endorsement showing appellant's name and address. The address written on the back of the check was the same as the address shown on the front. The clerk, as required, sought management approval of the check. Upon viewing the check, the manager requested appellant to come to the store office. Appellant admitted that he knew the check had been stolen and had placed the endorsement thereon.

An employee of Interstate identified the check as one which had been stolen from the company. He stated that this type of check was used for petty cash purposes, never for payroll and that appellant had never been employed by Interstate and did not have au-

---

[1] The company name on the check and the purported reason for which the check was being issued appeared as "INTERSTATE PALLET CO., INC." and "PAYROLL," respectively.

thority to possess or cash the check.

Appellant presented no evidence on his behalf. In support of his motion to strike, his counsel made the following argument to the trial court:

The basis for my motion to strike on the forgery would be that this isn't an instrument which has been forged, because it does not have legal efficacy. With regard to the uttering, that has to be based on an instrument which was forged.

■ Virginia defines forgery as "the fraudulent making of a false writing, which, if genuine, would be apparently of legal efficacy." *Terry v. Commonwealth*, 87 Va. 672, 674, 13 S.E. 104, 105 (1891); *Gordon v. Commonwealth*, 100 Va. 825, 829, 41 S.E. 746, 748 (1902).

[F]orgery is the false making or material alteration, with the intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy. It makes no difference how the writing may be made, whether by handwriting, printing, steel engraving, lithographing, rubber stamp, or what not. It simply is the making of a writing with intent to defraud, and which writing, if it were genuine, might apparently be of legal efficacy.

*Hanbury v. Commonwealth*, 203 Va. 182, 187, 122 S.E.2d 911, 914 (1961).

Appellant argues that because no signature of a drawer appeared on the check, the check did not meet "the legal efficacy" test. We disagree.

■ "[A]n instrument is one of legal efficacy, within the rules relating to forgery, where by any possibility it may operate to the injury of another." *Gordon*, 100 Va. at 829, 41 S.E. at 748. The fact that a document may be so irregular that a bank would be justified in refusing payment, or that a transferee would be justified in not accepting the instrument, does not mean that the writing lacks apparent legal efficacy. *Id.* at 828, 41 S.E. at 747. A check which has been fraudulently written or altered in a manner that possibly will operate to the injury of another constitutes a forgery.

The instrument presented for collection was a form check with the name and address of the purported drawer imprinted on the face of the check; appellant's name was fraudulently placed on the check as the intended payee and endorsed personally by him; and it was falsely represented as a company payroll check genuine in every respect except it was not signed on the line for the drawer's signature. Appellant knew the check had been stolen. He presented the check for the purpose of obtaining merchandise and cash. The evidence is sufficient to prove that appellant, with the intent to defraud, imprinted or caused to be imprinted the sum of $311.54 as the amount of the check, for "PAYROLL," and payable to him. Appellant, with an intent to defraud, endorsed the check. By endorsing the check, regardless of the fact that it lacked a drawer's signature and was irregular on its face, appellant accorded the instrument legal efficacy as between the endorser and transferee because he warranted that he had good title to the instrument and that it had not been materially altered. Code § 8.3-417. On its face, the check had a sufficient appearance of genuineness that it possibly "may operate to the injury of another." *Gordon*, 100 Va. at 829, 41 S.E. at 748. The check was of sufficient apparent legal efficacy to support the trial court's finding that appellant was guilty of forgery and uttering.

■ Instruments may be subject to forgery, even though other steps would have to be taken before they would be perfected, as where, in order to complete their legal effectiveness, they need an endorsement. 36 Am. Jur. 2d *Forgery* § 25 (1968); *see Wyatt v. State*, 257 Ala. 90, 57 So. 2d 366 (1952); *Norton v. State*, 129 Wis. 659, 109 N.W. 531 (1906); *Santolini v. State*, 6 Wyo. 110, 42 P. 746 (1895).

Our research reveals no Virginia case precisely on point. However, *Gordon* holds that the writing or alteration does not have to relate to the making or negotiation of the check. In fact, the alteration of the instrument in *Gordon* occurred after the instrument had been legitimately negotiated and paid and canceled by the bank. The drawer wrote on the face of the check after it was returned to him "in full account to date." Although the notation had no bearing upon the legal efficacy of the check as a negotiable instrument, the notation had apparent legal efficacy as a receipt which could be used to defraud the payee on the account.

Similarly, although the endorsement by appellant may not have obligated the bank or firm who owned the check to pay it, when appellant filled in the check without authority and endorsed it, he made a false writing which represented that he was the payee of the instrument. When he endorsed the check, he fraudulently warranted that he had title to the instrument and that it had not been altered. *Gordon* held that "the gravamen of the charge is not the forgery of the check, as such, but, its endorsements, as a receipt." 100 Va. at 828, 41 S.E. at 747. "[C]onceded that, as a check, the paper in question was irregular, possibly so irregular that the bank would have been justified in refusing payment;" nevertheless, "it might be made the vehicle of fraud and prejudice." *Id.* at 829, 41 S.E.2d at 747.

Cases from other states support our holding. In *Mayes v. State*, 264 Ark. 283, 571 S.W.2d 420 (1978), the Court, construing Arkansas statutes not identical to those in Virginia, stated that a check, otherwise complete, which did not have either a handwritten or facsimile signature under the printed name of the drawer, met the legal efficacy test. Consistent with *Gordon*, the Arkansas Court held that it is not necessary that the forged writing "create a valid and legally enforceable obligation in order to constitute the making of it a forgery . . . . *It is sufficient that it might possibly deceive another and was prepared with intent to deceive and defraud another*." *Id.* at 295, 571 S.W.2d at 427 (quoting *In Re Parker*, 57 Cal. App. 2d 388, 134 P.2d 302 (1943)) (emphasis added).

In *State v. Morse*, 38 Wash. 2d 927, 234 P.2d 478 (1951), the defendant alleged that he could not be convicted of forgery because the instrument he presented for payment lacked "the personal signature of any drawer." The defendant argued that because the instrument had no signature of a drawer "the check has no legal efficacy." In *Morse*, the name "Hillyard Motors" was printed on the check and appeared to be the drawer. The Court held that the check had legal efficacy within the meaning of the forgery statute. *Id.* at 930, 234 P.2d at 480.

No definition of forgery can be comprehensive enough to include all the crimes that may be committed by simple use of pen, paper and ink. *See People v. Kubanek*, 370 Ill. 646, 19 N.E.2d 573 (1939); *People v. Abeel*, 182 N.Y. 415, 75 N.E. 307 (1905). One authority has stated that a false instrument, to be forgery,

must be capable of deceiving another and "[i]f the resemblance to the genuine instrument is sufficiently close that there is a bare possibility of imposing the instrument on another as genuine, this is sufficient to constitute forgery." 36 Am. Jur. 2d *Forgery* § 21 (1968).

In the instant case, there can be no doubt that appellant intended to defraud the grocer. When he presented the instrument to the clerk to obtain merchandise and cash in exchange for the check, his endorsement of the check represented to the grocer that the check had legal efficacy. We do not construe the previously decided Virginia cases so narrowly as to require us to hold as a matter of law that there was no possibility that the check would be accepted and paid by the bank upon which it appeared to be drawn. On the contrary, we hold that a form company check bearing its name and address clearly printed on the face thereof, appearing to be payable in payment of a "payroll" debt, duly endorsed by the named payee and presented for payment, clearly has *apparent* legal efficacy.

> The purpose of the statute against forgery is to protect society against the fabrication, falsification and the uttering of instruments which *might* be acted upon as being genuine. The law should protect, in this respect, the members of the community who may be ignorant or gullible as well as those who are cautious and aware of the legal requirements of a genuine instrument. An instrument is not the subject matter of forgery only where it is so defective on its face that, as a matter of law, it is not capable of defrauding anyone. The instrument which was uttered by defendant in this case might on its face have easily defrauded someone. In fact, it would have been legally enforceable in its incomplete state if, as it represented, there was in fact an underlying debt.

*Mayes*, 264 Ark. at 294, 571 S.W.2d at 427.

We agree that the purpose of the Virginia statute likewise is to protect society against fabrication and falsification of writings "by simple use of pen, paper and ink," and for the reasons stated af-

firm the judgments of the trial court.

*Affirmed.*

Coleman, J., concurred.

Benton, J., dissenting.

"Forgery is a common law crime in Virginia." *Fitzgerald v. Commonwealth*, 227 Va. 171, 173, 313 S.E.2d 394, 395 (1984). "[It] is the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability." *Bullock v. Commonwealth*, 205 Va. 558, 561, 138 S.E.2d 261, 263 (1964). A century ago, the Supreme Court explained:

The instrument must appear on its face to be, or be in fact, one which, if true, would be valid or legally capable of effecting a fraud. Writings invalid on their face are not subjects of forgery.

*Terry v. Commonwealth*, 87 Va. 672, 674, 13 S.E. 104, 105 (1891).

The Commonwealth did not establish that the check, if genuine, was of apparent legal efficacy. The proof of that element was lacking because the check did not contain a signature purporting to be that of a drawer. Under the common law, "[f]orgery cannot happen in the case of an unsigned paper." *State v. Imboden*, 157 Mo. 83, 87, 57 S.W. 536, 537 (1900).

For any check to be valid it must be "signed by the maker or drawer." Code § 8.3-104. " '*Signed*' includes any symbol executed or adopted by a party with present intention to authenticate a writing." Code § 8.1-201(39). A signature may consist of "any word or mark used in lieu of a written signature." Code § 8.3-401. The check that Abdullah Muhammad gave to the cashier, however, did not have a symbol, word, mark, or any other writing purporting to be the drawer's signature at the line designated for the drawer's signature.

Neither *State v. Morse*, 38 Wash. 2d 927, 234 P.2d 478 (1951), nor *Mayes v. State*, 264 Ark. 283, 571 S.W.2d 420 (1978), supports the majority's position that the check had appar-

ent legal efficacy. In *Morse*, the court held as follows:

The recognized rule is that, in order to constitute a forgery, a writing or instrument must be such that if genuine it would have efficacy as affecting some legal right. *State v. Kuluris*, 132 Wash. 149, 231 P. 782; *State v. Taes*, 5 Wash. 2d 51, 104 P.2d 751. In the latter case it was held that an instrument purporting to be a bank check but not containing the name of any bank would not, if genuine, have such efficacy as to furnish the basis for a charge of forgery.

*Whether a check signed only "Hillyard Motors" would, if genuine, have some legal efficacy depends upon the provisions of the negotiable instruments act relating to the kind of signature necessary to create liability.* Rem.Rev.Stat. § 3409, § 18 of the Uniform Negotiable Instruments Act provides that: "No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided. But one who signs in a trade or assumed name will be liable to the same extent as if he had signed his own name."

*The name "Hillyard Motors" signed to this check, as drawer, is a trade name or assumed name. Had such name been signed by, or upon authority of, the person or persons doing business under this trade name or assumed name, then, under the above-quoted statute, such person or persons would have been liable thereon. The check in question therefore has legal efficacy within the meaning of the rule stated above,* and is a "written instrument" or "writing" within the meaning of the forgery statute. The trial court did not err in upholding the sufficiency of the information in this respect.

38 Wash. 2d at 929-30, 234 P.2d at 479-80 (emphasis added).

In *Mayes*, the court stated that where the company name was printed on the check at the place where the drawer's signature would ordinarily appear, that printing served as "a sufficient signature, if it is intended as such." 264 Ark. at 292, 571 S.W.2d at 426. It should be noted, however, that *Mayes* involves the interpretation of an Arkansas statute that does not contain the requirement that the instrument be of "apparent legal efficacy." 264 Ark. at 293, 571 S.W.2d at 426.

Under the [Arkansas] statute, one forges a written instrument, if with purpose to defraud he draws, makes, completes, counterfeits, *possesses* or utters a written instrument that *purports to be* or *is calculated to become* or *to represent if completed*, the act of a person who did not authorize the act.

*Id.* at 290, 571 S.W.2d at 424 (emphasis added). The court clearly states that a finding of "apparent legal efficacy . . . is not a requirement under [Arkansas Code § 41-2302]." *Id.* at 293, 571 S.W.2d at 426.

Although in *Mayes* the court found by way of dictum that the check had apparent legal efficacy because the printed name constituted a drawer's signature, the court held that the check was a forgery under the Arkansas statute because it "purports . . . to represent if completed, the act of a person who did not authorize the act." *Id.* While the Arkansas statute obviously has a purpose broader than that promoted by the common law rule, the Arkansas Court emphatically removed any ambiguity when it pronounced, "It is clear that the concept of [forgery] is a much broader one than it was under prior law." *Id.* at 293, 571 S.W.2d at 426. The majority in this case loses sight of the fact, however, that the Arkansas statute is not the law in Virginia. In Virginia, the common law of forgery prevails. *Fitzgerald*, 227 Va. at 173, 313 S.E.2d at 395.

It has long been the common law rule that a check that lacks a drawer's signature is an instrument so incomplete that the check, even if genuine, would have no apparent legal efficacy. *Terry v. Commonwealth*, 87 Va. at 674, 13 S.E. at 105. *See also Smith v. State*, 7 Md. App. 457, 462, 256 A.2d 357, 361 (1969); *Metropolitan Nat'l Bank v. National Surety Co.*, 48 F.2d 611, 612 (D.C. Minn. 1931); *State v. Imboden*, 157 Mo. 83, 87, 57 S.W. 536, 537 (1900); 4 *Wharton's Criminal Law* § 512 (14th ed. 1981); Annotation, *Invalid Instruments as Subject of Forgery*, 174 A.L.R. 1307-08 (1948). *Compare Nikolic v. State*, 439 So. 2d 828 (Ala. Crim. App. 1983)(unsigned traffic ticket void on its face and, therefore, not subject of forgery); *Poe v. People*, 163 Colo. 20, 24-25, 428 P.2d 77, 80 (1967)(unsigned power of attorney and title having no real or apparent legal efficacy); *People v. Snyder*, 85 N.Y.S.2d 281, 282, 274 A.D. 371, 372 (1948)(unsigned bill of weight is void and ineffective on its face and cannot support for-

gery charge); *State v. Taes*, 5 Wash. 2d 51, 53, 104 P.2d 751, 752 (1940)(purported bank check omitting name of bank "would not have any efficacy as affecting a legal right and could not be basis for the [forgery] charge"). Moreover, under our statutory law, "[n]o person is liable on [a check] unless his signature appears thereon." Code § 8.3-401(1).[2]

> An unsigned . . . check . . ., the validity of which is dependent upon the signature of the person who makes or issues it, is susceptible of use as an instrument of fraud, but is not a counterfeit [or forgery]. . . . It actually purports to be nothing more than what it is, an invalid instrument, because unsigned.

*Metropolitan Nat'l Bank*, 48 F.2d at 612.

By failing to distinguish between the signature of a drawer and the signature of an indorser, the majority reaches the wrong conclusion. The absence of an indorsement does not affect the apparent legal efficacy of a check. The cases of *Wyatt v. State*, 257 Ala. 90, 57 So. 2d 366 (1952), *Norton v. State*, 129 Wis. 659, 109 N.W. 531 (1906), and *Santolini v. State*, 6 Wyo. 110, 42 P. 746 (1895), upon which the majority rely, all address the problem of a missing or forged *indorsement*. Whether an instrument "would, if genuine, have some legal efficacy depends upon the provisions of [the Commercial Code] relating to the kind of signature necessary to create liability." *Morse*, 38 Wash. 2d at 929, 234 P.2d at 479. "[T]he Code accords separate treatment to . . . drawer signatures . . . and . . . indorsements." *Perini Corp. v. First Nat'l Bank*, 553 F.2d 398, 403 (5th Cir. 1977). The dispositive question is the facial validity of the instrument.

> [T]he mere filling in of the fictitious name of the payee and the amount, might be enough to constitute forgery, even if another unauthorized person had signed the name of the purported drawer. The fact that the check was not indorsed or

---

[2] Any bank that pays a check that is missing the required signature of a drawer does so at the bank's risk. *See* Code § 8.3-401(1); *Spec-Cast, Inc. v. First Nat'l Bank & Trust Co.*, 128 Ill. 2d 167, 538 N.E.2d 543 (1989); *Wolfe v. University Nat'l Bank*, 270 Md. 70, 310 A.2d 558 (1973). *See also Jacoby Transp. Sys., Inc. v. Continental Bank*, 277 Pa. Super. 440, 419 A.2d 1227 (1980). Furthermore, the complainants in fact did not accept or honor the unsigned check. There is no evidence that the grocery store manager would have approved and honored the incomplete instrument or that he intended to do so.

negotiated is not determinative.

*Draper v. State*, 231 Md. 423, 426, 190 A.2d 643, 645 (1963). The absence of a signature by the drawer is significant because, without it, there is no foundation for liability. *See* Code § 8.3-401(1).

I believe that the majority simply misperceives the issue to be decided. The majority's extended discussion of *Gordon v. Commonwealth*, 100 Va. 825, 41 S.E. 746 (1902), highlights the problem. The Court in *Gordon* had no cause to address the elements of forgery of a check. The Court emphatically stated, "But, the *gravamen* of the charge is not the forgery of the check, as such, but, its endorsements, as a receipt." *Id.* at 828, 41 S.E. at 747 (emphasis in the original). The following quote clearly discloses that the issue before the *Gordon* Court was whether a writing which was added to a valid and previously negotiated check was fraudulently written to the prejudice of another:

After it had been construed and treated by the parties as a valid check for ten dollars, drawn by J.W. Gordon, payable to the order of W.E. Hughes, endorsed by Hughes in blank, endorsed by H. Hutchinson & Co. to the cashier of the Valley Nat'l Bank, endorsed and stamped paid by the Valley Nat'l Bank, and stamped on its face "paid" by the Farmers and Merchants Bank, upon which it was drawn, and had been delivered to the drawer, J.W. Gordon (and this is the legal import of the paper, with its endorsements, etc., as set out in the indictment), however irregular it may have been in its inception, according to business usage and custom, and common understanding, it constituted a valid voucher from Hughes to Gordon for ten dollars, which the former, by his endorsement and conduct, was estopped to deny. That being the legal import of the paper with its endorsements, the addition of the words "in full of account to date," alleged to have been fraudulently written upon the face of it by the accused after the paper came to his possession, had the effect of converting a genuine receipt from Hughes to the accused, for ten dollars, into a *spurious receipt* "in full of account to date," and necessarily enured to the prejudice of Hughes' rights. The writing, with the endorsements set out in the indictment, was sufficient to enable the court to perceive *judicially* that

it might be made the vehicle of fraud and prejudice, as charged, and hence the averment of extrinsic circumstances was unnecessary.

100 Va. at 828-29, 41 S.E. at 747 (emphasis in the original). The issue of forgery concerned only whether the writing, "in full of account to date," constituted a forged receipt. *Id.* Whether the *check* had legal efficacy or not was immaterial. In this case, however, we are required to decide whether a check, not a receipt, if genuine, would have apparent legal efficacy when it clearly lacks a drawer's signature. It does not.

In a criminal prosecution, the Commonwealth may select the appropriate crime or crimes upon which an accused may stand charged and convicted. However, when the prosecution pursues a charge which does not contemplate the particular case circumstances, it is not this Court's duty to expansively redefine the crime after the fact so as to accommodate the Commonwealth's erroneous theory. In my view, Muhammad may very well be guilty of a criminal offense, but it is not forgery as defined by Virginia common law. *See* Code § 18.2-178; *see Bateman v. Commonwealth*, 205 Va. 595, 139 S.E.2d 102 (1964); *Bullock v. Commonwealth*, 205 Va. 867, 140 S.E.2d 821, *cert. denied*, 382 U.S. 927 (1965).

For these reasons I dissent, and I would reverse the conviction.