COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Petty and Alston
Argued at Richmond, Virginia


EUGENE WORD

v.        Record No. 2660-07-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE WILLIAM G. PETTY
JULY 21, 2009


FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
G. Carter Greer, Judge

Joseph A. Sadighian, Senior Assistant Appellate Defender (Office of
the Appellate Defender, on brief), for appellant.

Benjamin H. Katz, Assistant Attorney General (William C. Mims,
Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted appellant, Eugene Word, of fourteen counts

of forging a public document, in violation of Code § 18.2-168.  On appeal, Word challenges these

convictions, arguing that the documents that he signed were not public records, that each signature

does not give rise to a separate count of forgery, and that the evidence presented at trial was

insufficient to show that he had the requisite intent to forge the documents.  As we explain below,

we agree with Word that the juvenile and domestic relations district court guilty plea form was not a

public record, and reverse and dismiss on that count.  We affirm the remainder of Word's

convictions.

I.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the proceedings as are necessary to the parties' understanding of the disposition of this appeal. On appeal, we view those facts and incidents in the "light most favorable" to the prevailing party below, the Commonwealth, Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003), and we grant to that party all fair inferences flowing therefrom. Coleman v. Commonwealth, 52 Va. App. 19, 21, 660 S.E.2d 687, 688 (2008).

In June 2006, Eugene Word ate a peach at a Martinsville Kroger store without paying for it. During the resulting shoplifting investigation, Word told the investigating officer, Officer Yaple of the Martinsville Police Department, that his name was William Eugene Davis, that he had no nicknames, and that he was born in Columbus, Ohio. Word also gave Officer Yaple a false social security number. Using that information, Kroger's loss prevention officer obtained a warrant in the name of William E. Davis. Officer Yaple served the warrant on Word and arrested him. After his arrest, Word was incarcerated in the Martinsville City Jail. During his incarceration he signed the jail's personal property receipt and the property issued/returned sheet. Each time he signed these documents, he signed the name "William E. Davis." Word signed the personal property receipt twice, and the property issued/returned sheet five times.

Word was tried before the Martinsville General District Court on the shoplifting charge for which he was arrested on June 8, 2006. [1] Word signed each document in relation to that prosecution as "William E. Davis." Those documents included two guilty plea forms. He signed the first, which was titled "City of Martinsville Juvenile and Domestic Relations Court Guilty Plea-Pro Se" on June 12, 2006. He signed the second guilty plea form, which was titled "City of Martinsville General District Court Guilty or Nolo Contendere Plea-Pro Se," on June 19, 2006. Both forms were styled Commonwealth v. William E. Davis, and bore the same case number. The warrant indicated

---

[1] Word ultimately pleaded guilty to concealing merchandise. He was sentenced to thirty days in jail suspended. The trial court also imposed a $100 fine, $76 in court costs, and restitution of $1.19 to Kroger.

that the general district court accepted Word's guilty plea on June 19.  On June 19, 2006, Word also signed the name "William E. Davis" to an acknowledgment of suspension of his driver's license arising from a failure to pay fines.

On December 7, 2006, Word was again arrested on suspicion of breaking and entering. Word identified himself to the arresting officer as "William E. Davis."  At the police department, Word signed a Miranda rights waiver prior to being interviewed.  Word signed both the rights waiver and his statement as "William E. Davis."  Although Word never identified himself by his correct name during the time at issue, the Martinsville police discovered through investigation that "William E. Davis" was a possible alias for Eugene Word.  Accordingly, the arrest warrant for breaking and entering was issued in the name of Eugene Word.  Word did not make any comment about the name on the warrant when he was arrested.

At trial, the Commonwealth presented evidence from an agent of the Virginia Department of Motor Vehicles regarding Word's application for a driver's license.  The agent provided an electronic image of Word, and testified that, in order to receive a Virginia driver's license, a customer must provide proof of a social security number, two proofs of legal presence in the country, and proof of residency.  The agent also testified that the DMV customer number issued to Eugene Word corresponded to Word's social security number.

Word testified at trial.  He explained that his birth name was William Eugene Davis, but, beginning at the age of four when his mother remarried, he was called Eugene Word.  Word testified that he was never issued a birth certificate.  Word registered for selective service as Eugene Word and served in Vietnam, and was convicted of various criminal charges while going by the name Eugene Word.  Word stated that he started using his birth name, William Eugene Davis, in 2005 as a way to honor his deceased father.

## II.

Word raises numerous issues on appeal. First, Word argues that the property receipt form, property issued/returned form, advice of rights form, and statement are not public records within the definition of Code § 18.2-168. Second, Word contends that the juvenile and domestic relations district court ("J&DR") guilty plea form that he signed cannot support a forgery conviction because it is a void order, and therefore not a public record. Third, Word argues that even if the personal property receipt form and property issued/returned form are public records, each of his signatures does not constitute a separate act of forging a public record. Word concedes that each of these arguments was not preserved for appeal during the trial, and asks us to invoke the ends of justice exception to Rule 5A:18. Finally, Word argues that the evidence adduced at trial is insufficient to show that he signed the name "William E. Davis" with the requisite intent to forge the documents in question.

### A. Ends of Justice

Rule 5A:18 precludes this Court from considering an issue for the first time on appeal. However, the rule does include two narrow exceptions—we may reach an issue for the first time on appeal if "'good cause [is] shown [for failing to raise the issue at trial] or [if it is necessary for us to address the issue] to enable [this Court] to attain the ends of justice' and prevent a miscarriage of justice." Tooke v. Commonwealth, 47 Va. App. 759, 764, 627 S.E.2d 533, 536 (2006) (quoting Rule 5A:18) (some alterations in original).

The exception that Word invokes in this case, the ends of justice exception, "is narrow and is to be used sparingly" when the trial court's error is "clear, substantial, and material." Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). An appellant relying on the ends of justice exception "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d

742, 744 (1987) (emphasis in original). Therefore, when we examine a record for a "'miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard,'" Tooke, 47 Va. App. at 765, 627 S.E.2d at 536 (quoting Lewis v. Commonwealth, 43 Va. App. 126, 134, 596 S.E.2d 542, 546 (2004), rev'd on other grounds, 269 Va. 209, 608 S.E.2d 907 (2005)); instead, the appellant must point to "'affirmative evidence of innocence or lack of a criminal offense'" in the record on appeal. Id.

1. Public Record

Word argues that the jail/annex property issued/returned sheets, police department advice of rights forms, and written statements to police are not public records within the meaning of Code § 18.2-168. In 1874, the Virginia Supreme Court defined a public record as a written memorial, intended to serve as evidence of something written, said or done, made by a public officer authorized to make it. Coleman v. Commonwealth, 66 Va. (25 Gratt.) 865, 881-82 (1874). In Reid v. Commonwealth, 16 Va. App. 468, 469, 431 S.E.2d 63, 63 (1993), this Court broadened the common law definition of public record by applying the definition found in the Virginia Public Records Act:

> "'*Public Records'* means, but is not limited to, all written books, papers, letters, documents, photographs, tapes, microfilm, photostats, sound recordings, maps, other documentary materials or information in any recording medium regardless of physical form or characteristics, including electronically recorded data, *made or received* in pursuance of law or in connection with the transaction of public business by any agency or employee of state government or its political subdivisions."[2]

---

[2] The definition of "public records" in Code § 42.1-77 has since been amended. It now states, in pertinent part:

> *"Public record"* or *"record"* means recorded information that documents a transaction or activity by or with any public officer, agency or employee of an agency. Regardless of physical form or characteristic, the recorded information is a public record if it is produced, collected, received or retained in pursuance of law or in connection with the transaction of public business.

Id. at 470, 431 S.E.2d at 64 (emphasis in original) (quoting Code § 42.1-77). This definition "includes virtually any recorded matter, in any format, memorializing any form of public business." Ronald J. Bacigal, Virginia Practice: Criminal Offenses and Defenses 312 (2008-2009 ed.).

Based upon the holdings of Coleman and Reid, we conclude that the jail/annex property issued/returned sheets, police department advice of rights forms, advice of right form, and written statement to the police were all public records. These documents were made in connection with transaction of public business—admitting a prisoner to jail and investigating a crime—and were made by an authorized public officer to serve as evidence of things that were written, said or done— the receipt of Word's personal property at the jail and the distribution of jail property to Word in the context of the property records, or legal proof that Word had been advised of his Miranda rights and had given a statement to the police.

Word does not point to any affirmative proof in the record establishing that these documents were not public records. Accordingly, no miscarriage of justice took place below, and we decline to apply the ends of justice exception to this issue.

## 2. J&DR Court Form

Second, Word argues that the trial court erred by convicting him of forging a J&DR guilty plea form because, as a fifty-seven-year-old man, he could not be subject to the criminal jurisdiction of the J&DR court on these charges, rendering the guilty plea a nullity. And, Word reasons, a document that is a nullity cannot be a public record. Word concedes that he did not preserve this issue at trial and asks us to apply the ends of justice exception to reach this issue.

As discussed *supra*, a document is a public record when "made or received in pursuance of law or in connection with the transaction of public business by any agency or employee of state government or its political subdivisions." Reid, 16 Va. App. at 470, 431 S.E.2d at 64. On the

narrow facts of this case, it appears that the J&DR guilty plea form was not prepared in connection with a legitimate legal proceeding.  Indeed, our review of the record indicates that the J&DR form was not "of legal efficacy" and, therefore, was not a public record.  Rodriquez v. Commonwealth, 50 Va. App. 667, 671, 653 S.E.2d 296, 298 (2007).  This conclusion is supported by the replacement of the J&DR form with a general district court form before final judgment was entered in the general district court.

Accordingly, Word has shown affirmative evidence in the record establishing that an element of the offense of forging a public document did not exist and that he therefore did not commit the crime of forging a public record.  In this situation, the J&DR form was of no more legal efficacy than a blank piece of paper, and therefore could not, as matter of law, be a public document.  We therefore invoke the ends of justice exception because a miscarriage of justice took place below, and reverse Word's conviction for this count of forging a public document and dismiss the corresponding indictment.

### 3.  Separate Signatures

Word next argues that the trial court erred by convicting him of seven counts of forgery based upon multiple signatures on two documents:  the jail/annex property issued/returned sheets and personal property receipt.  Word signed the property issued/returned sheet five times and the personal property receipt twice.  Word argues that the plain language of the Code § 18.2-168, which criminalizes the forging of "*a* public record," (emphasis added), indicates that the forgery of each *record*, rather than each *signature* on that record, is a separate count.

Word's question presented on this issue assumes that his false signatures on the two public documents were sufficient to support only two convictions for forging a public record.  Hence, his contention that he could only be convicted of one forgery for each document he signed essentially raises a double jeopardy argument challenging multiple punishments for one crime on appeal.  See,

- 7 -

e.g., Payne v. Commonwealth, 277 Va. 531, 674 S.E.2d 835 (2009) (The Fifth Amendment "guarantees protection against . . . multiple punishments for the same offense." (citations omitted)).  However, even assuming, without deciding, that there was a violation of the Fifth Amendment below, that error would not be "sufficient to warrant application of the ends of justice exception to Rule 5A:18."  West v. Commonwealth, 43 Va. App. 327, 339, 597 S.E.2d 274, 279 (2004) (citing Ashby v. Commonwealth, 33 Va. App. 540, 544-45, 535 S.E.2d 182, 185 (2000)).  Our Supreme Court has explained that double jeopardy is "akin" to an affirmative defense, and "if [it] is not raised in proper time is deemed to have been waived."  Hubbard v. Commonwealth, 207 Va. 673, 678, 152 S.E.2d 250, 253 (1967).  Accordingly, an allegation that an appellant's guarantee against double jeopardy may have been violated below is not enough to invoke the ends of justice exception to Rule 5A:18.  West, 43 Va. at 339-40, 597 S.E.2d at 280.

Moreover, each of the signatures documented a separate transaction— either the receipt or return of property—and therefore had "a separate existence with separate consequences." Hines v. Commonwealth, 39 Va. App. 752, 758, 576 S.E.2d 781, 785 (2003).  We note that Code § 42.1-77 states that a public record is "recorded information that documents a transaction or activity by or with any public officer . . . [r]egardless of physical form or characteristic . . . ." Thus, the mere fact that multiple records were recorded on a single sheet of paper has no bearing on our analysis.  Accordingly, Word has not met his burden to show affirmative evidence that a miscarriage of justice took place, the ends of justice exception is not applicable here, and we determine that this issue was procedurally defaulted pursuant to Rule 5A:18.

B.  Sufficiency of the Evidence

Finally, Word challenges the sufficiency of the evidence adduced at trial to prove that he had the requisite intent to forge his signature.  He argues that he had adopted the name William

Davis as his true name and thus did not have any intent to deceive. Word preserved this argument for appeal in his motion to strike.

"When a defendant challenges the sufficiency of the evidence, we accord the judgment of a circuit court sitting without a jury the same weight as a jury verdict." Britt v. Commonwealth, 276 Va. 569, 573-74, 667 S.E.2d 763, 765 (2008). Accordingly, we only ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In doing so, we are mindful that "great deference must be given to the fact finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1988). Because we "presume the judgment of the trial court to be correct" we will reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see Code § 8.01-680.

Code § 18.2-168 prohibits the "[forging of] a public record . . . , or [the uttering], or [attempting] to employ as true, such forged record, . . . knowing the same to be forged . . . ." Forgery itself is a common law crime in Virginia. It is "'the false making or material altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability.'" Rodriquez, 50 Va. App. at 671, 653 S.E.2d at 298 (quoting Fitzgerald v. Commonwealth, 227 Va. 171, 173-74, 313 S.E.2d 394, 395 (1984)). Although "'[n]o definition of forgery can be comprehensive enough to include all the crimes that may be committed by simple use of pen, paper and ink[,]'" id. (quoting Muhammad v. Commonwealth, 13 Va. App. 194, 198, 409 S.E.2d 818, 821 (1991)), the crime of forgery may "be accomplished

- 9 -

by the fraudulent application of a false signature to a true instrument . . . ," id. (quoting Quick Serv. Box Co. v. St. Paul Mercury Indem. Co., 95 F.2d 15, 16-17 (7th Cir. 1938)).

Word argues that the Commonwealth did not prove beyond a reasonable doubt that he intended to forge the records in this case by signing his name as "William E. Davis." When Word testified at trial, he explained that he had adopted the name William E. Davis after his biological paternal grandmother's death as a way to honor that part of his family. However, the trial court, acting as fact finder, chose not to believe Word's explanation. Instead, it believed the Commonwealth's theory of the case: that Word chose to use the name William E. Davis to conceal the criminal record existing under the name Eugene Word, and thus receive a lighter sentence. The Commonwealth presented evidence in support of its argument in the form of Word's criminal record and Word's statement that "I don't have any crimes against me as William Eugene Davis and there's no FBI number for William Davis . . . ." We cannot say that there was no evidence to support the trial court's finding of intent, nor can we say its finding was plainly wrong.

III.

Based on the foregoing discussion we affirm Word's convictions of forgery except for the conviction for signing the juvenile and domestic relations district court guilty plea form (indictment number CR07000140). We reverse that conviction and dismiss that indictment.

> Affirmed in part,
> reversed and
> dismissed in part.